# Ramsey v. Louisville, Cincinnati & Lexington Railway Company.

89    99
122    486

89    99
f135    510

### APPEAL FROM JEFFERSON CIRCUIT COURT.

1. CONTRIBUTORY NEGLIGENCE.—In an action to recover damages for a personal injury alleged to have been caused by the negligence of defendant, the plaintiff can not recover if he so far contributed to the injury by his own negligence, or want of ordinary or common care and caution, that but for such negligence or want of ordinary care and caution on his part the injury would not have occurred. The degree of negligence of which the plaintiff must be guilty to defeat a recovery by him must be at least *ordinary* negligence, his failure to take *unusual* care being no defense to the action.

2. RAILROADS—FAILURE TO STOP AT CROSSING AND LOOK AND LISTEN FOR APPROACHING TRAIN.—It is the duty of those in charge of a train approaching the crossing of a street in a town or city not only to give warning of the train's approach, but to slacken the speed of the train, and one who is about to cross the track has the right to assume that these legal requirements will be complied with. Therefore, where one is injured in attempting to cross the track, by reason of the negligence of the company in failing to comply with these requirements, it can not be imputed to him as negligence that he did not stop and look and listen to ascertain whether a train was approaching, and his failure to do so does not deprive him of the right to recover; and in such a case it is not a material inquiry whether the collision would have occurred if the plaintiff had been driving at a less speed.

3. WHERE A CITY ORDINANCE PRESCRIBES THE RATE AT WHICH TRAINS SHALL RUN in the city, one who is about to cross the track has the right to assume that this requirement will be complied with.

4. IT WAS NOT NECESSARY FOR PLAINTIFF TO CHARGE GROSS NEGLECT; an allegation of ordinary neglect was sufficient to enable him to recover compensatory damages.

WILLETT C. TRABUE FOR APPELLANT.

1. If, admitting all the evidence for plaintiff to be true, and every fact fairly deducible therefrom, the plaintiff has made out his case, it is error to instruct the jury to find for defendant. (Fightmaster v.

---

* This case has been pending upon a petition for rehearing; and, for that reason, has not been reported sooner.

Ramsey v. Louisville, Cincinnati & Lexington Railway Company.

Beasley, 7 J. J. Mar., 411; Shay v. Richmond & Lancaster Turnpike Co., 1 Bush, 108.)

Even if the judge would set the verdict aside, if one were obtained, it may be error in him to give a peremptory instruction. (Buford v. Lou. & Nash. R. Co.)

2. The failure to give warning of the approach of the train to the crossing was negligence. (Paducah & Memphis R. Co. v. Hoehl, 12 Bush, 41; Johnson v. Hudson River R. Co., 6 Duer., 642; L., C. & L. R. Co. v. Goetz's Adm'r, 79 Ky., 442; L. & N. R. Co. v. Commonwealth, 13 Bush, 389.)

3. Whether the plaintiff was guilty of contributory negligence was a question for the jury and not the court to determine. (Parsons on Contracts, 702.)

4. While the burden of proof is on plaintiff to make out his case, the burden is on defendant to show that plaintiff's own negligence contributed to the injury. (Paducah & Memphis R. Co. v. Hoehl, 12 Bush, 46.)

5. The running of a train at too great a rate of speed is negligence. (L., C. & L. R. Co. v. Goetz's Adm'r, 79 Ky.)

It was negligence in defendant to run its train in the city at 16 miles an hour when a city ordinance did not permit it to run at a faster rate than 6 miles an hour.

6. The failure of plaintiff to look up the track before attempting to cross was not negligence. In the absence of the usual notice given of the approach of a train, he had the right to presume that the track was clear. (Paducah & Memphis R. Co. v. Hoehl, 12 Bush, 48; Spencer v. Illinois Central R. Co., 29 Iowa, 60; Philadelphia & Trenton R. Co. v. Hagan, 47 Pa., 246.)

ISAAC H. TRABUE of counsel on same side.

W. LINDSAY for appellee.

A person traveling on a highway or street, and about to pass a railway crossing, ought to make use of sight and hearing to avoid collision. He should listen for signals and look in the different directions from which a train may come. If, by neglect of this duty, he suffers injury from a passing train, he cannot recover of the company, although it may itself be negligent, or have failed to give the signals required by statute, or be running at a speed exceeding the legal rate. (Pierce on Railroads, 343, and authorities there cited.)

Additional authorities cited in petition for rehearing:

Sherman & Redfield on Negligence, section 29; Haring v. New York R. Co., 13 Barbour, 9; Grows v. Maine Cent. R. Co., 67 Maine, 100; Grippen v. New York Cent. R. Co., 40 N. Y., 34; North Penn. R. Co. v. Heileman, 49 Pa. St., 63; Rorer on Railroads, vol. 2, pp. 1006, 1007, 1010; C. & R. I. R. Co. v. McKean, 40 Ill., 218; C., B. &

Ramsey v. Louisville, Cincinnati & Lexington Railway Company.

Q. R. Co. v. Harwood, 80 Ill., 88; Pierce on Railroads, 243; Artz v. Chicago R. Co., 34 Iowa, 153; 38 Iowa, 293; 44 Iowa, 284; 37 Iowa, 316; 31 Iowa, 370; 42 Iowa, 192; 49 Iowa, 469; 51 Iowa, 419; L., C. & L. R. Co. v. Goetz's Adm'r, 79 Ky., 442; L. & N. R. Co. v. Wolfe, 80 Ky., 82; Ky. Cent. R. Co. v. Thomas, 79 Ky., 160.

CHIEF JUSTICE LEWIS delivered the opinion of the court.

This is an action to recover damages for personal injury to the plaintiff caused by a collision of the defendant's railway train with a coal cart he was driving.

It was not necessary for him to state in his petition that the injury was caused by the gross neglect of the defendant's servants or agents, an allegation of ordinary neglect being sufficient to enable him to recover compensatory damages.

At the conclusion of the plaintiff's evidence, the court instructed the jury to find for the defendant, and whether that instruction was proper is the only question before us.

The evidence shows that while the plaintiff was driving his cart, to which two mules were hitched, along Floyd street, across defendant's railroad track, in the city of Louisville, it was struck by the train moving fifteen or sixteen miles an hour, and knocked off the track, and he was thrown out with such violence as to severely injure his back and arm. And, according to the testimony of both the plaintiff and the only other witness introduced, no signal of the approach of the train to the crossing was given by those in charge of it, either by ringing the bell or blowing the whistle. It farther appears that railway trains are, by city ordinance, expressly prohibited running at a greater rate of speed than six miles an hour within the city limits.

According to the evidence in this case it is, in our opinion, clear that the plaintiff had a *prima facie* right to recover. And we must, therefore, conclude that the instruction complained of was given by the court upon the assumption that there appeared such contributory negligence on the part of the plaintiff as defeats that right.

The evidence shows that it was a blustering, windy, dusty day when the collision occurred, and that the plaintiff, when approaching the crossing, was driving in a sweeping trot, and did not, before attempting to cross the track, stop, nor listen nor look along the track but one way.

Stating the evidence in support of the theory of contributory negligence as strong as the record will warrant, which we have done, it is not such as to authorize the court to take the case from the jury.

When the defense in a case like this is contributory negligence, the proper question for the jury is, whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence, or want of ordinary or common care and caution, that, but for such negligence or want of ordinary care and caution on his part, the misfortune would not have occurred. In the first case, the plaintiff would be entitled to recover; in the second, he would not. (Paducah & M. R. Co. v. Hoehl, 12 Bush, 41; Ky. C. R. Co. v. Thomas, 79 Ky., 160.)

The degree of negligence of which the plaintiff must be guilty to defeat a recovery by him must be at least *ordinary* neglect, his failure to take *unusual* care being

no defense to the action.    (Sherman & Redfield on Negligence, sec. 29.)

What is ordinary care or ordinary neglect must obviously depend upon the obligations and duties resting at the time and place upon the party doing the injury, and the party injured, and the circumstances of each particular case or class of cases.

If the plaintiff was guilty of such contributory negligence in this case as should defeat his recovery, it must consist in his failure to stop before attempting to cross, and, by listening and looking up and down the track, ascertain whether he could do so safely, and in the great rate of speed at which he was driving his cart.

But this court has held that "it can not be regarded as a fixed rule that the failure to look for the approach of a train is negligence on the part of the party injured, as there may be proper diligence without the exercise of that precaution." (Paducah & Memphis R. Co. v. Hoehl, 12 Bush, 41.)

If the place of crossing is where neither the speed of the train is required to be slackened, nor signals of its approach given, it would be culpable negligence on the part of a person about to cross the track not to stop and use his sense of sight and hearing.    For in such case his safety depends upon his own vigilance, and those in charge of the train would not be responsible for any injury that might be done to him, unless they should discover his peril in time, by the use of ordinary care, to avoid injuring him.

On the other hand, the dictates of humanity as well as the law imperatively require that the speed of railway trains be so slackened when approaching the cross-

ing of a street in a city or town, and that such distinct
and timely signals be given as, in a great degree, to
lessen the necessity for vigilance and care on the part
of those passing along the street.

It would be unreasonable to require each one of the
hundreds or thousands of persons passing daily on foot
or in vehicles along a public street in a populous busy
city or town, to stop at a railroad crossing in order to
listen or look up and down the track, sometimes visible
but a short distance, to ascertain whether a train is
approaching, when they can, without doing so, have
comparative security against inconvenience and injury
by a reduction of the speed of the trains, and easily and
certainly warned of its approach by the bell or whistle.

As said in Spencer v. Illinois C. R. Co., 29 Iowa, 60,
cited by this court in the case referred to in 12 Bush,
a person about to cross a railroad track "is only re-
quired to have satisfactory evidence that the road is
clear, and this he might have by those warnings usually
attending the starting or moving of a train through a
town or city, just as effectually and efficiently as by
looking up and down the track."

In this case not only was the rate at which defend-
ant's train might lawfully run in the city of Louisville
prescribed by ordinance, but, independent of any ordi-
nance, it was the duty of those in charge of the train to
give proper signal of its approach to Floyd street, and
the plaintiff had the right to assume that these legal
requirements would be complied with. And, conse-
quently, it can not be imputed to him as negligence that
he did not anticipate culpable negligence and miscon-
duct on the part of the servants and agents of the

defendant, of which the evidence shows they were guilty, and exercise the ordinarily unnecessary precaution to stop and listen and look up and down the track before attempting to cross it.

Whether the train would or would not have struck the plaintiff's cart if he had been driving at less speed than a "sweeping trot," which may or may not be a forbidden gait, is a futile inquiry, in view of the indubitable fact that the collision would not have occurred if the train had been running only six miles an hour, and the proper signals had been given.

The judgment is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.

———————

* CASE 17—PETITION EQUITY—FEBRUARY 22, 1883.